**BRYSON LAW FIRM, PLC**
7227 E. Baseline Road, Suite 114
Mesa, AZ 85209
480-813-0444
480-632-2928 fax
brent@brysonlegal.com

**Brent H. Bryson (SB # 018255)**
Attorney for Plaintiffs

SUPERIOR COURT FOR THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PINAL

| | |
|---|---|
| Jean Torres, a single woman; Leah Kulwicki, as Personal Representative of the Estate of Yolonda Arenas, deceased; Jerry Martin Stedman, Sr., a single man; and E.A., a minor, <br><br> Plaintiff, <br><br> v. <br><br> Pinal County, Arizona; Pinal County Sheriff's Office; Mark Lamb, in his capacity as Sheriff of Pinal County, Arizona; Pinal County Correctional Health; Wexford Health Sources, Inc., a foreign corporation; Kristie Newton, ARNP; Kari Rounds, R.N.; Allison Muntz, RN; Shirley Wood, RN; Wendi Hatman, R.N.; Steven Grabowski, LPN; Richard Encinas, LPN; Stephanie Dowd, BSN; Mindy Beck, RN; John Does I-XXXX; Jane Does I-XXXX; Black Corporations I-V; White LLC I-V; Blue Partnerships I-V; AND Red Trusts I-V, <br><br> Defendants. | No. 2:21-cv-01743-JJT-CDB <br><br> **Second Amended Complaint** <br> **(Wrongful Death; 42 U.S.C. § 1983)** |

For their Second Amended Complaint against the Defendants, Plaintiffs allege as follows:

-1-

1. Plaintiff Jean Torres is the mother of Yolonda Arenas, who is now deceased.

2. Plaintiff Leah Kulwicki is the sister of Yolonda Arenas, deceased. Leah Kulwicki brings this action as the Personal Representative of the Estate of Yolonda Arenas, Deceased.

3. Plaintiff Emilya Arenas is a minor and the daughter of Yolonda Arenas, decedent.

4. Plaintiff Jerry Martin Stedman, Sr. is the father of Yolonda Arenas, decedent.

5. Defendant Pinal County Sheriff's Office (PCSO) is a law enforcement agency in Pinal County, Arizona. PCSO provides law enforcement throughout the County and operates the County jail system, including the Pinal County Adult Detention Center.

6. Defendant Mark Lamb is the Sheriff of Pinal County and is responsible for the operation of PCSO, both in its policing and jail operations.

7. Defendant Pinal County, Arizona is a political subdivision of the State of Arizona. The County is responsible for funding PCSO and PCADC.

8. Defendant Pinal County Correctional Health ("PCCH") is a political subdivision of the State of Arizona and, upon information and belief, provides various healthcare services to the Pinal County Adult Detention Center ("PCADC") and employs healthcare providers at PCADC in carrying out said services.

9. Defendant Wexford Health Sources, Inc. ("WHS") is a foreign corporation doing business in Arizona and provided healthcare services to the PCADC and employs healthcare providers at PCADC in carrying out said services.

10. Upon information and belief, Kristie Newton is an individual employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

11. Upon information and belief, Kari Rounds is an individual employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

12. Upon information and belief, Allison Muntz, RN, is a registered nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

13. Upon information and belief, Shirley Wood, RN, is a registered nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

14. Upon information and belief, Wendi Hatman, is an individual employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

15. Upon information and belief, Steven Grabowski, LPN, is a licensed practical nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

16. Upon information and belief, Richard Encinas, LPN, is a licensed practical nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

17. Upon information and belief, Stephanie Dowd, BSN, is a nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

18. Upon information and belief, Mindy Beck, RN, is a registered nurse employed by Wexford Health Sources and working at PCADC and was, at all times relevant here, providing healthcare services to Yolonda Arenas.

19. The individual Defendants named herein as medical providers are collectively referred to hereinafter as the "Healthcare Provider Defendants".

20. Defendants John Does I-XXXX, Jane Does I-XXXX, Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V are persons, corporations, limited liability companies, partnerships and/or trusts who have not been identified and who contributed to the damages suffered by the Plaintiffs that are the subject of this action. Once Plaintiffs identifies these individuals and/or entities, it will seek leave to amend the complaint to add these defendants.

21. This Court has jurisdiction over the persons and subject matter of this dispute.

22. Venue is property in Pinal County because the incident which is the subject of this action occurred in Pinal County.

## **GENERAL ALLEGATIONS**

23. In June 2020, Yolonda Alise Arenas ("Yolonda") was incarcerated at PCADC for an alleged probation violation.

24. At the time Yolonda entered PCADC, she was healthy and able to care for herself.

25. Prior to entering PCADC, Yolonda was diagnosed with Lupus and was using medication to manage her Lupus.

26. Yolonda's Pre-Classification Assessment Inmate Screening Question highlighted that Yolonda had a "serious medical condition that may require attention while [in PCADC]". In addition, Yolonda disclosed to Mindy Beck, RN, on June 28, 2020 that she suffered from Lupus. Upon information and belief, no Defendant did anything to determine the nature or extent of Yolonda's "serious medical condition" so as to ensure that she received proper medical treatment while at PCADC.

27. On or about July 3, 2020, Yolonda reported to Defendant Wendi Hatman that she "has burning pain upon urination, migraine 10/10, body aches, lupus, shortness when lying down, chills, shivering, dizzy" and that her lupus symptoms would come and go. Because of these symptoms, Wendi Hatman placed Yolonda in isolation segregation and performed a urine test which showed blood and protein in the urine along with leukocytes. Upon information and belief, no other medical attention was provided or recommended.

28. Given Yolonda's symptoms, Defendant Shirley Wood conducted a COVID-19 test on or about July 6, 2020, which returned negative. However, because Yolonda was still exhibiting symptoms, Defendant Shirley Wood elected to keep Yolonda in isolation. Upon information and belief, no other medical attention was provided or recommended.

29. On or about July 8, 2020, Yolonda reported to Defendant Richard Encinas pain in left upper extremity with "1-2+ edema noted" which was "tender to the touch." Later that day Defendant Stephanie Dowd performed a urine dip, which returned "dark orange" with blood and protein in her urine. Upon information and belief, no other medical attention was provided or recommended.

30. On or about July 14, 2020, blood results for Yolonda revealed that several of her blood markers were flagged as being "low" or "high". Despite receiving this information, no Defendant, upon information and belief, provided any other medical attention or recommendations to Yolonda.

31. A couple of weeks later, on or about July 26, 2020, Yolonda again reported arthritis and fever caused by her lupus to Defendant Shirley Wood and Defendant Steven Grabowski. Specifically, Yolonda reported that she has lupus which causes her to get "stiff and it is difficult for her to go up and down stairs." Although Yolonda reported her symptoms, upon information and belief, no medical attention was provided or recommended.

32. On or about August 7, 2020, Yolonda again reported complaints due to her lupus. The provider, Defendant Stephanie Dowd, noticed Yolonda walking, rising and sitting very stiffly, which was consistent with the symptoms Yolonda reported a couple of weeks earlier. However, upon information and belief, no other medical attention was provided or recommended.

33. On or about August 28, 2020, Yolonda again reported to Defendant Allison Muntz, that she was experiencing a "lupus flareup". Specifically, Yolonda reported that she fell in the shower and had too much pain due to her lupus flare up to get out of bed and she requested her lupus medication. In addition, Yolonda complained of a "rash to upper thigh/groin area" and a "reddened area to right lower back". Instead of providing treatment, care and trying to diagnose and understand what was going on with Yolonda, Defendant Steven Grabowski simply informed Yolonda to "not lay in bed all day" and Defendant Allison Muntz simply told Yolonda to do better at keeping groin area dry. Upon information and belief, no other medical attention was provided or recommended.

34. The following day, August 29, 2020, Yolonda was again observed by Defendant Kari Rounds with an unsteady gait, dizziness, and weakness. Yolonda continued to complain of "joint pain 10/10" and fatigue. The rash in Yolonda's groin area was still visible. However, Defendant Kari Rounds simply informed Yolonda to drink more and have better hygiene practices. Upon information and belief, no other medical attention was provided or recommended.

35. Throughout the time period noted above, despite Yolonda's repeated requests for her lupus medication and her reported symptoms consistent with lupus flare ups, no Defendant would provide her with lupus medication or otherwise evaluate Yolonda to determine the extent of the lupus flareup and potential consequences of same.

36. Instead Defendants took an apathetic approach and despite the pain Yolonda was actively reporting to them, Defendants told her to keep moving; and despite Yolonda informing Defendants that she was drinking plenty of liquid and that, therefore, was likely not the cause of her discolored urine, Defendants told her to hydrate better; and despite informing Defendants that going to the bathroom was a difficult process due to the pain and difficulty moving, Defendants simply told her to have better hygiene.

37. The foregoing demonstrates that, instead of giving Yolonda the medical attention she needed, Defendants would ignore her pleas for medical help, and drag her out of her bed and force her to walk around the facility, even though she told them it hurt.

38. Upon information and belief, even though Yolonda could ambulate independently when she first entered PCADC, while she was there her walking ability was so debilitated that she was required to use a walker to get around.

39. However, upon information and belief, during the last week of her stay in the PCADC, Yolonda could no longer even move about by herself or go to the restroom on her own and despite continued requests for her Lupus medication, PCADC refused to treat her.

40. Defendants had a duty to provide medical care for Yolonda. Upon information and belief and as detailed above, Defendants failed and refused to provide Yolonda with adequate medical care and treatment despite her requests for said treatment, they made intentional decisions regarding Yolonda's confinement that included not providing necessary care; they saw her health seriously deteriorate but failed to take action to improve her health, all of which caused or contributed to Yolonda's suffering and death.

41. Yolonda was reinstated to supervised probation and released from the PCADC on September 3, 2020. She was so sick from the lack of medical care and treatment at PCADC that, although she had entered under her own strength, she left the facility in a wheelchair.

42. Yolonda's family took Yolonda to the Emergency Room of Mountain Vista Medical Center that same day to be treated for the illness caused by Defendants' failure to provide adequate medical treatment.

43. Yolonda stayed at Mountain Vista Medical Center for treatment of her illness until her death on September 9, 2020.

44. The coroner's report states that Yolonda died from cardiopulmonary arrest due to lupus nephritis and systemic lupus erythematosus.

45. The PCADC and all other Defendants failed to provide care and treatment of Yolonda while she was in their care, which failure directly resulted in Yolonda's death.

46. Upon information and belief, Defendants maintained a policy of failing to supervise the practices of its deputies and medical professionals in relation to the medical care, treatment and needs of its inmates.

47. Upon information and belief, Defendants were, or should have been, on actual or constructive notice that this failure to supervise the practices of its deputies and medical professionals in relation to the medical care, treatment and needs of its inmates would likely result in a constitutional violation.

48. Upon information and belief, the deputies and medical professionals routinely declined requests for medical care and treatment and that, because of the regular denial of medical needs by the deputies, Defendants should have known, or actually did know, that this unconstitutional conduct was occurring.

49. Upon information and belief, in the instant case, this failure to supervise its deputies was the cause of the constitutional violation against Yolonda.

50. At all relevant times, Defendants acted under color of law.

51. The Deputy Sheriffs and detention officers entrusted with the care and treatment of Yolonda were acting within their scope of employment with the Pinal County Sheriff's Office.

52. Upon information and belief, the Healthcare Provider Defendants were employed by Defendant Wexford Health Services and, at all times relevant hereto were acting within the course and scope of their employment with Wexford Health Services.

53. Defendants John Does I-XXX and Jane Does I-XXX, are detention officers and other personnel at the PCADC, ignored Yolonda's requests for proper medical care and treatment, resulting in her death.

54. Defendants John Does XXXI-XXXX and Jane Does XXXI-XXXX, and Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V are doctors, nurses, and other licensed health care providers, who failed to provided adequate medical care to Yolonda Arenas, and they were acting in the course and scope of employment at all relevant times.

## COUNT ONE

## Deprivation of Rights Pursuant to 42 U.S.C. § 1983

55. Plaintiffs restate all prior allegations of this Complaint as if fully set forth hereat.

56. Defendants, acting under color of state law, knowingly, willfully and intentionally deprived Yolonda of her rights, privileges and immunities secured by 42 U.S.C. § 1983, other federal and state statutes, as well as the Constitutions of the State of Arizona and the United States of America, including the 8th and/or 14th Amendments, by acting with deliberate indifference, failed to properly care for Yolonda's serious medical need.

57. Defendants Pinal County, Pinal County Sheriff's Office, Mark Lamb, Pinal County Correctional Health, and Wexford Health Services, Inc. are liable for the actions of the Healthcare Provider Defendants, John Does I-XXXX and Jane Does I-XXXX, pursuant to principles of *respondeat superior*.

58. Defendants' deliberate indifference to Decedent Yolonda Arenas' serious medical need, resulted in damages, including injuries, pain and suffering, medical expenses, mental anguish, and loss of life, in amounts to be proven at trial.

59. Defendants Mark Lamb, Pinal County Sheriff's Office, Pinal County, and Pinal County Correctional Health, acting under color of state law, and with deliberate indifference, knowingly, willfully and intentionally deprived Yolonda Arenas of her rights, privileges and immunities secured by the laws and constitutions of the United States and the State of Arizona, including the 8th and/or 14th Amendments, by: negligently, hiring, supervising and training their detention officers and medical providers; and by directing their subordinates conduct, by actual knowledge of and acquiescence in those violations, or, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.

60. Moreover, Defendants Mark Lamb, Pinal County Sheriff's Office, Pinal County, and Pinal County Correctional Health maintained a policy of inaction, as noted above, in the manner in which they supervised their deputies and medical providers in relation to the medical care provided to inmates. Further, Defendants Mark Lamb, Pinal County Sheriff's Office, Pinal County, and Pinal County Correctional Health failed to implement procedural safeguards to prevent constitutional violations like the one that occurred against Yolonda.

61. These failures and violations directly and proximately caused Yolonda Arenas' damages, including pain and suffering, medical care, pain and suffering, mental anguish, and loss of life, all in amounts to be proven at trial.

62. Defendants are further responsible for funeral and burial expenses; medical bills; the value of Yolonda's lost wages and benefits; the loss of Yolonda's love, affection, comfort, companionship and guidance, and Plaintiffs' pain and suffering.

63. Defendants acted with evil intent or motive, or reckless or callous indifference to Yolonda Arenas' rights, and are liable for punitive damages.

## COUNT TWO

### Deprivation of Rights Pursuant to 42 U.S.C. § 1983

64. Plaintiffs restate all prior allegations of this Complaint as if fully set forth hereat.

65. The Healthcare Provider Defendants, Wexford Health Services, Inc., John Does XXXI-XXXX and Jane Does XXXI-XXXX, and Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V are doctors, nurses, and other licensed health care providers, and are private individuals or entities, acting under color of state law, by conspiring with one or more state officials to knowingly, willfully and intentionally deprive Yolonda of her rights, privileges and immunities secured by 42 U.S.C. § 1983, other federal and state statutes, as well as the Constitutions of the State of Arizona and the United States of America, including the 8th and/or 14th Amendments, by acting with deliberate indifference, failed to properly care for Yolonda's serious medical need.

66. These failures and conspiracies directly and proximately caused Yolonda Arenas' damages, including pain and suffering, medical care, pain and suffering, mental anguish, and loss of life, all in amounts to be proven at trial.

67. These failures and conspiracies directly and proximately caused Plaintiffs' further damages, including funeral and burial expenses; medical bills; the value of Yolonda's lost wages and benefits; the loss of Yolonda's love, affection, comfort, companionship and guidance, and Plaintiffs' pain and suffering.

68. These Defendants acted with evil intent or motive, or reckless or callous indifference to Yolonda Arenas' rights, and are liable for punitive damages.

## COUNT THREE

## Wrongful Death: NEGLIGENCE

69. Plaintiffs restate all prior allegations of this Complaint as if fully set forth hereat.

70. The Healthcare Provider Defendants, Wexford Health Services, Inc., John Does XXXI-XXXX and Jane Does XXXI-XXXX, and Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V are doctors, nurses, and other licensed health care providers, had a duty to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which they belong within the State of Arizona acting in the same or similar circumstances.

71. The Healthcare Provider Defendants, Wexford Health Services, Inc., John Does XXXI-XXXX and Jane Does XXXI-XXXX, and Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V failed to exercise that duty.

72. Upon information and belief, the Healthcare Provider Defendants', Wexford Health Services, Inc., John Does XXXI-XXXX and Jane Does XXXI-XXXX, and Black Corporations I-V, White LLC I-V, Blue Partnerships I-V and Red Trusts I-V's breach of this duty was a direct and proximate cause of Yolonda Arenas' injuries and damages, including pain and suffering, medical care, mental anguish, and loss of enjoyment of life, and death, and Plaintiffs' additional damages including, but not limited to funeral and

burial expenses, medical bills, the value of Yolonda's lost wages and benefits, the loss of Yolonda's love, affection, comfort, companionship and guidance, Plaintiffs' pain and suffering, and all other damages pursuant to A.R.S. § 12-611, *et seq*.

73. Moreover, Defendants Pinal County, Pinal County Sherriff's Office, Pinal County Correctional Health, and Mark Lamb, as owners, operators, managers, possessors, and/or supervisors of the PCADC, had a duty toward Yolonda to ensure her safety.

74. Defendants Pinal County, Pinal County Sherriff's Office and Mark Lamb failed to properly carry out their duty and said breach of their duty was a direct and proximate cause of Yolonda's injuries and damages, including pain and suffering, medical care, mental anguish, and loss of enjoyment of life, and death, and Plaintiffs' additional damages including, but not limited to funeral and burial expenses, medical bills, the value of Yolonda's lost wages and benefits, the loss of Yolonda's love, affection, comfort, companionship and guidance, Plaintiffs' pain and suffering, and all other damages pursuant to A.R.S. § 12-611, *et seq*.

75. Upon information and belief, the Healthcare Provider Defendants were, at all times relevant hereto, employed by Wexford Health Services, Inc. and were acting within the course and scope of their employment. As such, Wexford Health Services, Inc. is liable for the acts and/or omissions of the Healthcare Provider Defendants under principles of *respondeat superior* and vicarious liability.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

A. For general, compensatory, and economic damages;

B. For medical expenses past and future incurred as a result of the incidents described herein;

C. For emotional distress and loss of enjoyment of life;

D. For punitive or exemplary damages against Defendants;

E. For all costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and otherwise permitted by law;

F. For pre- and post-judgment interest to the extent permitted by law; and

G. For such other and further relief as the Court deems just and proper.

DATED this 5th day of October, 2022.

BRYSON LAW FIRM, PLC


/s/ Brent H. Bryson
Brent H. Bryson
7227 E. Baseline Road, Suite 114
Mesa, AZ 85209
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October, 2022, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filling, and served on counsel of record for Defendants via the Court's CM/ECF system.

Elizabeth Gilbert
Brandi C. Blair
Justin M. Ackerman
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Defendants


/s/ Brent H. Bryson